**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| KYLE B. DYSON,<br>629 Grayson Avenue<br>Richmond, VA 23222<br><br>    *Plaintiff*,<br><br>    v.<br><br>HENRICO COUNTY SCHOOL BOARD<br><br>    Serve: Office of the County Attorney<br>         Attn: Joseph Rapisarda, Jr.<br>         Administration Building<br>         Suite 330<br>         4301 E. Parham Road<br>         Henrico, VA 23228<br><br>    *Defendant*. | Case No: 3:20-cv-547<br><br><u>Jury Demand</u> |

## COMPLAINT

**COMES NOW** the Plaintiff, Kyle B. Dyson (hereinafter "Dyson" or "Plaintiff"), by and through undersigned counsel, Christopher E. Brown, Esq. of THE BROWN FIRM PLLC, and brings this action against Defendant Henrico County (hereinafter "Henrico" or "Defendant").

## PARTIES

1. Plaintiff Dyson is an African American male. Dyson was originally hired in 1985 as a Custodian. Since 1988 Dyson has been employed by Henrico Public Schools, as a Custodian I Supervisor.

2. Defendant Henrico County School Board ("Henrico or "Defendant") is the governing body for the public schools in Henrico County in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331. The action under Title VII for retaliation is being brought per 42 U.S.C. § 2000(e) *et seq.*. The action under the ADA is brought per 42 U.S.C. § 12117(a). The action under Section 504 of the Rehabilitation Act is brought per 29 U.S.C. § 701 *et seq.*

4. Venue is proper in the Court because both the Plaintiff and the Defendants are within this Court's jurisdiction; the Plaintiff is still employed by Henrico County, VA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. The conditions precedent to the filing of this action have been satisfied in that Plaintiff initially filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), based on race, color, retaliation, age and FMLA, charge number 438-2019-00058, on or about October 9, 2018, a copy of which is attached hereto and incorporated herein as *Exhibit A*.

6. Additionally, on September 4, 2019, the EEOC issued Plaintiff a Notice of Right to Sue Letter, dated September 4, 2019, a copy of which is attached hereto and incorporated herein as *Exhibit B*. Plaintiff filed suit on the Title VII claims within ninety (90) days of receiving the notice: 3:19-cv-893. Plaintiff exercised his right to take statutory nonsuit, which was entered on January 15, 2020. Plaintiff files this action within 6 months of his voluntary nonsuit.

## STATEMENT OF FACTS

7. Dyson is a United States citizen of African-American descent, residing in Richmond, Commonwealth of Virginia.

8. Dysons graduated high school and has no college education.

9. Dyson began working for Defendant Henrico in August of 1985 as a Custodian.

10. Dyson was promoted to Custodian I Supervisor in 1988.

11. Dysons has committed 34 years of his life to serving Henrico County, his excellent work is often recognized by the principals of the public schools to which he is assigned, and his employment history is impeccable.

12. Dyson is currently earning approximately $30,000.00 per year.

13. In 2018, Dyson earned approximately $45,000.00, the difference being the overtime he was regularly granted in 2018, before experiencing retaliation.

14. Mr. Dyson currently reports to James Smith (African American), Foreman, and he previously reported to Greg Lawson (African American).

15. Mr. Dyson's second level supervisor is Mack Beaton (Caucasian), Career & Technical Education Director.

## I. TITLE VII VIOLATION – RETALIATION

### A. Dyson is Harassed by Subordinate

16. Starting on or around 2014, Mr. Dyson supervised Edwina Bulls (African American), custodial worker.

17. During the four years Mr. Dyson supervised her, Ms. Bulls bullied, harassed, and was otherwise insubordinate to Mr. Dyson. This harassment and insubordination were enabled by his supervisors, Mr. Beaton, Mr. Lawson, and Ms. Watson.

18. For example, on one occasion, while in front of administrator Betsy Pierce, Ms. Bulls cursed at Mr. Dyson, called him a "n****r" (a racial epithet), and refused to do her job.

19. Mr. Dyson reported this behavior to his supervisors and James Smith, Ray McClain, Beverly Godwin, and Harry Simmons in Human Resources ("HR"), yet Ms. Bulls was not reprimanded in any way and this behavior continued.

3

20. After the "n****r" incident, having received no repercussions, Ms. Bulls acted as if she were granted carte blanche by Ms. Godwin and Mr. Beaton in HR to say and do whatever she chose.

21. Also during this time, Robbie Eastman, a building maintance supervisor, proclaimed himself a white supremacist and began calling Mr. Dyson "bud" and "buddy."

22. When Dyson reported this degradation to HR representative Mr. Lawson, again nothing was done.

### B. Dyson Reports Harassment, Is Punished and Threatened by Management; Harassment Continues

23. Mary Alderson, an HR representative, told Mr. Dyson to stop calling James Smith and Ray McClain from Human Resources and went on to *write up* Dyson for complaining/reporting Bulls hurtful language and insubordination.

24. A couple of days later, Angela Watson, building administrator, approached Dyson with a writeup for him to sign, and said, "everything stays in the building and this is what happens when you go outside the building to HR" (referring to his being written up).

25. Rather than reprimand Bulls for her harassment and refusal to do her job, Defendant chose to punish and threaten Dyson for reporting her, placing documentation in his personnel file concerning his conduct.

26. Each day Dyson would photograph Bulls' incomplete work (proof of her insubordination) and text and/or email building administration (Greg Lawson, Angela Watson) about his concerns of Bulls not doing her job, all to no avail.

27. Bulls would regularly cuss at Dyson and talk back, refusing to do her assigned job duties and informing him of what she was and was not going to do; management never stepped in and repeatedly let her get away with it.

28. On *one* occasion Dyson was overheard using a curse word; he was written up immediately.

29. Dyson had a series of meetings with Mr. Lawson and Ms. Watson to complain about Bulls' behavior and ask for assistance in disciplining her. Rather than help to reconcile the problem, Defendant chose instead to ignore the problem and encouraged Dyson to do the same.

30. Ms. Watson even told Dyson that "we don't want to see nothing" and to stop sending the pictures and sending emails / text messages about Bulls' work. Ms. Watson then accused Dyson of being hostile towards her.

31. In that same meeting Ms. Watson stated to Mr. Lawson that she was "sick and tired of Dyson nit-picking about Bulls; we need to do something about him [Dyson]."

32. Ms. Bulls' refusal to do her job and being allowed to do so by management directly impacted Mr. Dyson's ability to be an effective supervisor.

33. Defendant's refusal to take seriously Dyson's concerns about and complaints of harassment left him with no choice but to try to resolve the issue externally.

34. On October 9, 2018, Dyson filed an EEOC Charge (#438-2019-00058), alleging discrimination on the basis of race and retaliation for reporting Ms. Bulls to HR and his supervisors.

35. On December 3, 2018, Defendant responded to Dyson's charge.

### C. Defendant Retaliates Against Dyson for Filing EEOC Charge

36. Since the filing of the EEOC Charge, Dyson has been the subject of a number of retaliatory actions:

    a. Mr. Dyson has been removed from the Adult Education Center facility, which he had been assigned to for many years, and assigned to work at different buildings requiring him to travel all over the County to different schools.

    b. Dyson's overtime opportunities were stripped away; prior to filing the EEOC charge he would work approximately 32 hours of overtime each pay period. Following the filing of his EEOC charge, his overtime hours were abruptly changed to 0 (zero). No reason was given for this change.

    c. Mr. Dyson's regular work hours were also changed: before the EEOC charge was filed he worked 7:00 a.m. - 3:30 p.m.; following the filing of his EEOC charge, his hours were changed to 1:30 p.m. - 10:00 p.m. No reason was given for this change.

    d. Mr. Dyson has been denied computer access which he had prior to the filing of the EEOC charge.

    e. Mr. Dyson's new uniform was withheld.

    f. Mr. Dyson was effectively demoted, as his supervisory duties and responsibilities were stripped away.

    g. Mr. Dyson was shipped all over the county and treated like a part-time substitute rather than a dedicated employee of 34 years.

37. In November 2018, Dyson was experiencing a lot of stress due to the retaliation he was experiencing at work and began seeing a therapist. The attitudes and behavior towards him just seemed to have ramped up since he filed his EEOC complaint.

38. In one condescending exchange, Dyson felt Watson was trying to bait him into losing his temper – something he suspected was stereotypically expected of him if properly pushed.

Dyson, not wanting to fall prey to such tactics, requested of James Smith, the foreman, that he be moved out of the building for the day; desparately, he pled with Smith, "get me out of this building." This was a request to be removed from what Dyson perceived to be a volatile situation at that moment, not a permanent move. Yet, since that request was made, Dyson has not been assigned to that building, his home school. Henrico has since used and relied on that request to justify assigning Dyson to various schools around the county and its refusal to reassign him to that original school.

39. Between November 2018 and the end of the winter break, Mr. Dyson worked only as a custodial substitute and has been moved from one building to another each day.

40. On or around December 2018, Edwina Bulls retired.

41. On January 3, 2019, Dyson clarified with James Smith, the foreman, that he did not ask to be transferred from his home building; he only requested to be removed from a situation where he felt uncomfortable and threatened. Smith responded that he was "working on something for [Dyson]."

42. In early January 2019, unbeknownst to him, Mr. Dyson's security code to his originally assigned building was deactivated. Learning about this deactivation was how Dyson discovered that he was being officially taken off assignment to his home building; as opposed to a temporary move, which Dyson felt would have certainly been over after Bulls resigned in December 2018, if not sooner.

43. Yet, once school reopened in January of 2019, Mr. Dyson was told by Kim Tiggle, secretary, to return to his "old stomping grounds," which would have been the Adult Education Center (his "home building"). Mr. Dyson had expected that his workday would return to some normalcy. Yet, when he arrived at the Adult Education Center as instructed, he was then told to

go to Central Office, and Ms. Tiggle acted as if she had never told Mr. Dyson to report to his "old stomping grounds."

44. Mr. Dyson has been humiliated and stressed over his work situation for the past several years, but particularly in the months leading up to Bulls' retirement in December of 2018. He has submitted complaints about Ms. Bulls regarding her failure to perform her duties which have been routinely ignored, leaving Dyson to do her job to ensure the schools are clean.

45. Rather than be recognized and rewarded for his dedication and commitment to keeping the public schools clean, he is treated like a villain, an outsider, and retaliated against for exercise his federally protected rights.

### D. *Defendant Further Retaliates Against Dyson by Refusing to Grant Reasonable Accommodation or Worker's Compensation*

46. This stress and the covering of Ms. Bull's duties which she refused to perform, led to Dyson hurting his back on April 8, 2019.

47. As a result of this injury, Dyson went to urgent care, and was directed to stay out of work for two weeks. Dyson was using his accrued annual leave and/or sick leave for these days off. On April 9, 2019, Dyson went to see his primary care physician, who diagnosed him with strained muscles in his back. He contacted his foreman, James Smith, who told Dyson he needed to fill out an accident report and advised this would be a worker's compensation claim.

48. Dyson filled out the report, but his employer continued to refuse to treat the issue as a worker's compensation situation. Dyson returned to urgent care for a referral, and they referred him to OrthoVirginia, as they were the doctors who handled treatment of employees with worker's compensation claims.

49. On April 26, 2019 Dyson went to an appointment at OrthoVirginia with Dr. Robertson and was placed on lifting restrictions to not lift objects over 15lbs for 6 weeks. Dyson

contacted his management to discuss his restriction, but was immediately rebuffed, and despite the letter from Dr. Robertson, he was denied the opportunity to work – i.e. denied an accommodation to work with the Dr prescribed restriction. Dyson was told to stay home, that he could not work with the restriction in place, and this required Dyson to continue to use his accrued annual and sick leave.

50. Dyson was seen again by Dr. Robertson on June 7, 2019, who stated Dyson may return to work on Monday June 10, 2019, but on "light duty."

51. Dyson was denied the opportunity to work with no consideration for accommodating his "light duty" status, and remained home using his annual / sick leave.

52. Allowing/requiring Dyson use his accrued annual and sick leave may appear on its face to be a reasonable accommodation for the situation, as Dyson is a custodian. However, Dyson's white coworkers who, upon information and belief, have not filed EEOC charges against Defendant, and who share the same/similar job duties were granted accommodations that allowed them to continue working and earning compensation. Yet Defendant refused to consider allowing Dyson the same.

53. Dyson is aware of several employees who receive accommodations from Henrico's Public Schools:

    a. In September of 2019, Drew L. (Caucasian male) produced a Dr.'s note stating he could not climb a ladder over 10', which was part of his job. He was provided accommodations which continue to this day.

    b. Daniel L., (Caucasian male) assigned to Dumbarton Elementary, has a physical impairment. The County accommodates his disability via a part time assistant (Ms. Ellis) to help him complete his daily job.

    c. "Faye" (Caucasian female), assigned to Ward Elementary, has seen the County accommodate her disability, as she is often unable to complete tasks (kitchen floor and cafeteria floor often remain dirty for weeks at a time) but is never reprimanded.

    d. Hani G., (Caucasian male) assigned to Johnson Elementary, left the country for the summer, ran out of FMLA, but is still working today and was never threatened with loss of the job.

54. On June 10, 2019, Dyson returned to see Dr. Robertson who then placed Dyson on restricted work status – not to lift anything greater than 50lbs, with no expiration of the restriction at the time.

55. Dyson contacted management to discuss his restriction and returning to work, but was again immediately rebuffed, and despite the letter from Dr. Robertson, he was again denied the opportunity to work – i.e. denied a reasonable accommodation to work with the physician prescribed restriction.

56. On June 21, 2019, Dyson was seen again by Dr. Robertson, and told the doctor that Henrico refused to allow him to go to work with the restrictions, and that he was using his accrued annul / sick leave so he could get paid while off work. Despite the pain he was experiencing, the doctor noted Dyson's work status as, "return to work full duty without any restrictions on Monday June 24, 2019."

57. Dyson received a letter from Henrico County advising that his FMLA would expire on June 25, 2019. As Dyson was using accrued annual/sick leave, it is unclear why that would be the case. It appeared to Dyson that the Defendant was further retaliating against him for the filing of

the EEOC charge, and trying to intimidate him. Dyson became fearful that Defendant would unlawfully terminate his employment on the false basis that his FMLA expired.

58. With his employer ignoring Dr. Robertson's recommendations for his work status, and later recommendation that Dyson return with no restrictions (apparently because Dyson told him he was going to lose his job if he did not return), Dyson returned in late June 2019 and suffered through his workdays, further injuring his back.

59. The Defendant is aware of the ADA and provides accommodations to plenty of employees.

60. The Defendant violated Title VII by retaliating against Mr. Dyson via refusing to reasonable accommodation which they offered to other employees who have not, upon information and belief, filed EEOC charges or complained of discrimination in the workplace.

## COUNT I
## RETALIATION -- TITLE VII

61.     Plaintiff alleges and incorporates all the above paragraphs.

62.     Title VII protects employees from retaliation by their employer for exercising their rights under said Title.

63.     Plaintiff exercised his rights under Title VII by reporting what he believed to be discrimination.

64.     The Defendant failed to investigate the complaints of Plaintiff, left the entire process in the hands of those against whom the complaints were made, thus nothing was done to resolve the complaints.

65.     The Defendant threatened Plaintiff in an attempt to dissuade him from filing further complaints alleging violations of his federally protected rights.

66. While the Defendant has policies against discrimination and retaliation in place, those policies were not followed, not adhered to, and not enforced by the Defendant.

67. Defendant stripped Plaintiff of his supervisory duties and responsibilities, allowing those he supervised to be insubordinate.

68. The Defendant then retaliated against Plaintiff by cutting his overtime hours and converting (i.e. demoting) him into a low-level custodian assigned to travel all over the County to fill in or otherwise cover various schools throughout the County; as opposed to the more senior Custodians who are assigned to a specific school, resulting in a much more stable work environment that does not require immense amounts of travel.

69. The Defendant further retaliated against Plaintiff by denying his reasonable accommodation requests and worker's compensation

70. Plaintiff was disabled for purposes of the ADA when work restrictions were placed upon him by a physician in 2019.

71. Plaintiff was otherwise qualified to perform the duties of the position.

72. Defendant refused to consider a reasonable accommodation for Plaintiff.

73. Defendant refused to meet with Plaintiff to discuss a possible accommodation.

74. Defendant refused to discuss alternatives merely requiring that Dyson stay home.

75. Defendant then threatened Dyson with the loss of his FMLA protections, when he was using his personal accrued annual and sick leave while he was out of work until June 24, 2019.

76. Defendant has granted other employees with the same job duties with the same/similar reasonable accommodations.

77. Defendant is liable for the value of the annul and sick leave used for the two month period Plaintiff was directed not to work given the restrictions placed upon him by the physician, the emotional distress resulting from Defendant's violations of Plaintiff's federal rights, and the costs and fees, including attorney's fees, of pursuing his claims.

78. As a consequence of Defendant's action, Defendant is liable to Plaintiff for the overtime hours from January 2019 to present that he was accustomed to over the previous 6-12 months in 2018, and the emotional distress of being the subject of Defendant's retaliation.

79. Defendant is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff Dysons respectfully requests this Court award the following (to the extent not redundant with any award in his Workmen's Compensation claim):

A. Enter judgment for the Plaintiff Dyson against the Defendant Henrico on all counts, including a finding that Defendant violated Title VII;

B. Award the Plaintiff full back pay and front pay, including salary, accustomed overtime, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses', cash awards, loss of retirement savings and benefits and other remuneration and privileges of employment retroactive to the date of any unlawful employment action found to have occurred in this case.

C. Award the Plaintiff compensatory damages for emotional distress injuries and loss in the maximum amount allowed by law;

D. Award Punitive Damages for the Defendant's blatant failure to comply with federal law, with its own policies, and for the malice and reckless disregard with which it acted in violating Plaintiff's federal rights.

E. Award Plaintiff pecuniary and out of pocket expenses;

F. Order Defendant to pay all reasonable attorney's fees, court costs, expert fees, and expenses, incurred by Plaintiff as a result of Defendants' actions and inactions, as well as pre-judgment and post-judgment interest;

G. Order injunctive relief to protect others from the discriminatory practices and actions of the Defendant which violate Title VII.

H. Order any and all other such other equitable and legal relief as the Court deems just and appropriate.

## JURY TRIAL DEMANDED.

Plaintiff demands a jury trial for this action.

          Respectfully submitted.

          **KYLE B. DYSON**

          By Counsel,

          **THE BROWN FIRM PLLC**

          By: __/s/_____
              Christopher E. Brown, Esq.
              VSB#39852
              526 King St. Suite 213
              Alexandria, VA 22314
              Tel: 703-924-0223
              Fax: 703-997-2362
              cbrown@brownfirmpllc.com
              *Counsel for Plaintiff Dyson*